# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6854 | **DATE** | JUNE 14, 2002 |
| **CASE TITLE** | JEROME ROBERTS and MELODY ROBERTS v. VILLAGE OF SHOREWOOD, ETC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [22] is granted. Plaintiffs' motion for summary judgment is denied without prejudice. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiffs dismissing plaintiffs' federal cause of action with prejudice and dismissing plaintiffs' state law cause of action without prejudice for lack of subject matter jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | 2 number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 17 2002 date docketed | 35 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 02 JUN 14 PM 5:06 | 6/14/2002 date mailed notice |
| cw | courtroom deputy's initials | FILED-ED 10 | MQM mailing initials |
| | | Date/time received in central Clerk's Office | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEROME ROBERTS and           )
MELODY ROBERTS,              )
                             )
            Plaintiffs,      )
                             )
      v.                     )    No. 00 C 6854
                             )
VILLAGE OF SHOREWOOD, an     )
Illinois municipal corporation, )
                             )
            Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jerome Roberts ("Jerome") and Melody Roberts ("Melody") are residents of defendant Village of Shorewood, located west of Joliet, Illinois. Plaintiffs are married; Jerome is African-American and Melody is White. Since 1993, Melody has operated Hand 'N Hand Discoveryland out of her residence located at 806 Ravinia in Shorewood. Discoveryland is a group day care home licensed by the State of Illinois. Since 1994, the State has licensed Discoveryland for a maximum of 16 children and it has been at full capacity continuously since 1997. In 1999, plaintiffs contracted to purchase a vacant lot at 24835 Jacob Court in Shorewood. In early 2000, Melody applied for a special

(conditional) use permit to provide in-home day care for 16 children at the Jacob Court property. Shorewood thereafter amended its Zoning Ordinance to specifically permit in-home day care. The new ordinance limited new permits to a total of 12 children, 8 full-time and 4 school age. Melody was granted a conditional use permit for the Jacob Court property, but limited to 12 children. Plaintiffs continue to live at and Discoveryland continues to be operated at their Ravinia home. Plaintiffs have not yet closed on the purchase of the Jacob Court property.

Plaintiffs' complaint contains four counts. Counts I and II are federal claims under 42 U.S.C. § 1983. Count I is a "class of one" equal protection claim that limiting in-home day care to 12 children was unreasonable, arbitrary, and vexatious. Count II is an equal protection claim that the 12-children limitation was imposed because Jerome is African-American and Melody is married to an African-American. Counts III and IV are supplemental state law claims. Count III seeks a declaration that the amendment of the Zoning Ordinance and partial grant of the requested conditional use permit exceeded defendant's zoning authority in that it was unreasonable and arbitrary. Count IV seeks a declaration that the amendment to the Zoning Ordinance and the requirement for a conditional use permit are unlawful in that local regulation of day care is preempted by state statute.

Defendant moves for summary judgment on all counts. Plaintiff cross moves for summary judgment on Counts III and IV only. Since summary judgment will be granted dismissing the two federal claims, summary judgment will not be considered as to Counts III and IV.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Schneiker v. Fortis Insurance Co., 200 F.3d 1055, 1057 (7th Cir. 2000); Baron v. City of Highland Park, 195 F.3d 333, 337-38 (7th Cir. 1999). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999); Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Shank v. William R. Hague, Inc., 192 F.3d 675, 681 (7th Cir. 1999); Wintz v. Northrop Corp., 110 F.3d 508, 512 (7th Cir. 1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950

F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); id. at 325 ("the burden on the moving party may be discharged by 'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. Id. at 324. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Id. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiffs' favor, the facts assumed to be true for purposes of ruling on defendant's motion for summary judgment are as follows. Plaintiffs reside at 806 Ravinia, Shorewood, Illinois. Shorewood is a non-home-rule municipality and Ravinia is a through street. Plaintiffs were married in 1998. Melody is White and Jerome is African-American. Sometime before 1993 until their divorce in 1995, Melody was married to Gerald Geiss, who is White. Melody is the sole owner and operator of Discoveryland, which she has operated out of her Ravinia residence since 1993. Discoveryland presently is a group day care home licensed by the Illinois Department of Children and Family Services ("DCFS"). The Illinois Child Care Act of 1969 defines a group day care home as "a family home which receives more than 3 up to a maximum of 16 children for less than 24 hours a day." 225 ILCS 10/2.20. The owner's own children or any other children under 12 who are present are included in the total amount of children allowed.

In May 1993, Melody applied to defendant to operate a day care home[1] at the Ravinia residence. At the same time, four other operators of day care homes applied for variations or permits. At the time, Melody and three of the other applicants were licensed for eight children. One applicant was licensed for 12 children. However, Melody was also in the process of

---

[1]Day care homes are limited to a maximum of 12 children. See 225 ILCS 10/2.18.

obtaining a group day care home license for a maximum of 12
children. The Zoning Board of Appeals ("ZBA") was aware of this
pending application. At its September 8, 1993 meeting, the ZBA
recommended approving special use permits for "day care homes"
for all five applicants. On September 14, the Village granted
the special use permits.

On November 1, 1993, Melody received notification that
the DCFS licensing representative was recommending that she be
granted a group day care home license for a maximum of 12
children, including Melody's own two children. The license was
made retroactive to August 23, 1993. In May 1994, plaintiff
requested licensing for an additional four school age children.
On August 23, 1994, the 16-children license was approved by DCFS.
For this number of children, licensing standards required that
Melody and three assistants be present. By December 1993,
Discoveryland's enrollment was 12 children. As of December 1997,
it was at the maximum capacity of 16 children and generally has
been at full capacity since then.

In 1995, defendant granted a conditional use permit to
Kim Meinke to operate an in-home day care business at her
residence in Shorewood. Meinke had a group day care home license
permitting 13 children.[2] In July 1997, Ann and Ronald Dill were

---

[2]In a September 21, 2000 letter purportedly from Meinke
to the Village, Meinke refers to having had 16 children at her
day care home in Shorewood. The letterhead indicates that Meinke
was then operating from Joliet. However, this letter is
unauthenticated and therefore is not admissible to show Meinke
served 16 children. Moreover, there is no evidence that the

granted a conditional use permit to operate a day care home at their residence in Shorewood. The Dills had a license for four children. In July 1998, Martin and Madonna Kenser were granted a conditional use permit to operate a day care home at their residence in Shorewood. The Kensers were licensed for seven children.

In April 1999, plaintiffs contracted to purchase the vacant lot at 24835 Jacob Court, which is located a few blocks from their Ravinia residence. The contracting seller is River Oaks West Joint Venture. Plaintiffs planned to build a home on Jacob Court and operate Melody's group day care home from the new location. A rider to the contract provided that there would be no restrictive covenants on the property that would prohibit the operation of a day care business. In December 1999, plaintiffs learned that covenants had thereafter been recorded that were inconsistent with the rider provision. On February 7, 2000, River Oaks informed plaintiffs that the covenants would not be amended to permit a day care business. On February 9, 2000, River Oaks sent plaintiffs written notice cancelling the sales contract, but did not return plaintiffs' earnest money. Plaintiffs have disputed with River Oaks the effectiveness of the cancellation.[3]

---

Village had been aware at the time that Meinke ever exceeded the 13-children limit contained in her state license.

[3]After the pending summary judgment motions were fully briefed, defendant was granted leave to file a citation to additional authority that is a summary judgment ruling in the

On February 9, 2000, Melody filed an application with defendant for a special (conditional) use permit to provide in-home day care at the Jacob Court property. At the time, Shorewood's Zoning Ordinance required a conditional use permit for a "daycare center" in a R-1 (residential zoning) area. The definition of a daycare center, however, was "[a] facility which exclusively provides supplemental parental care and supervision and/or educational instruction to children during the entire or any portion of the day." Although plaintiff submitted the request for a conditional use permit, she now contends it was unnecessary in that her home would not be used exclusively for day care and therefore would not be a daycare center as that term was used in the then-existing Zoning Ordinance. Since at least June 1993, the Zoning Ordinance allowed for home occupations, with babysitting services being an example of a home occupation. Discoveryland and other day care homes in Shorewood, however, generally did not fall within a permitted type of home occupation because home occupations had to be performed inside the home

---

Roberts' lawsuit against River Oaks. See Roberts v. NLSB, 2002 WL 925023 (N.D. Ill. May 8, 2002). In that ruling, the court granted summary judgment on the Roberts' Fair Housing Act discrimination claim on the ground that there was insufficient evidence of intentional discrimination on the part of any defendant. Since that was the only federal claim, the supplemental state law claims in that case were dismissed without prejudice and judgment was entered dismissing the case. The Roberts have appealed. Defendants do not expressly seek the application of collateral estoppel as to any factual issues. The NLSB opinion indicates that both the Roberts and River Oaks are still willing to close on the purchase of the Jacob Court property if certain conditions can be met. See id. at *4.

where they could be not observed and were limited to one non-occupant employee. State day care rules require that there be an outdoor play area and group day care homes require a minimum of two assistants/teachers in addition to the owner.

On March 1, 2000, the Shorewood Planning and Zoning Commission ("PZC") held a public hearing and heard testimony for and against Melody's application. At the conclusion of the hearing, the PZC recommended that the Village Board approve the permit. However, on March 28, 2000, the Village Board referred the matter back to the PZC upon the advice of Village Attorney David Silverman that it not approve the permit because it would be in conflict with the home occupation provisions of the then-current Zoning Ordinance. There is no evidence that this issue had ever been publicly raised as to any previous day care application. At the March 28 meeting, however, a representative of the developers had appeared to oppose Melody's application and had expressed his opinion that, although the developers were supportive of Melody's in-home day care services, they believed it violated restrictive covenants because not operated in a completely enclosed building. Evidence was also presented that home businesses could have an adverse effect on surrounding home values. Silverman further recommended that, if the Board was inclined to grant the permit, it defer action while it considered amending the Zoning Ordinance to clarify in-home day care rules.

On September 6, 2000, the PZC conducted a public hearing and recommended an amendment to the Zoning Ordinance removing

"day care homes" from the definition of home occupation; specifically allowing day care homes as a conditional use in residential zones; limiting the maximum number of children to eight full-time, plus four school-aged;[4] and requiring two parking spaces. On September 26, 2000, the Village Board adopted the amendment and approved a conditional use permit for Melody to operate a day care home at the Jacob Court property, though limited to the new Zoning Ordinance's provision of a maximum of 12 children.

Before approving the Zoning Ordinance amendment, the Village Board heard testimony for and against the amendment, including arguments that the existing ordinance should not be amended and there should be no increase in the size of permitted in-home day care. Objectors also voiced concerns about increased noise levels and traffic, as well as concerns about a business operating in a residential neighborhood, especially a cul-de-sac. Some of the objectors included neighbors of Jacob Court, which is planned to be a six-lot cul-de-sac. More than 100 residents signed a petition opposing the amendment to the Zoning Ordinance. Evidence was also presented that some surrounding communities completely banned in-home day care or limited it to eight children. Betty Capista, the wife of one of the Jacob Court developers, stated at the meeting that plaintiffs' planned home

---

[4]Initially, Silverman had drafted a proposed amendment allowing up to 16 children, but, by August 31, 2000, the proposed amendment had been changed to the total of 12.

would affect the "flavor" of the neighborhood.  At the Village
Board hearing, plaintiffs presented testimony and evidence
including the following:  the number of children then being
served; a traffic study showing an additional 7.75 cars per day;
plans for an 8000 square foot home to be built on a 1.9 acre lot,
with a circular drive and side load four-car garage; testimony
from a representative of Child Care Resource and Referral as to a
waiting list of 150 families; a plat of the subdivision; letters
and petitions of support; and photographs of the Jacob Court and
Ravinia locations.

Prior to the September 26 hearing, plaintiffs requested
that the Rainbow/PUSH Coalition and the Joliet Chapter of the
NAACP review the Village's actions.  Representatives of
Rainbow/PUSH submitted a written statement and appeared at the
hearing.  They expressed the view that the decisions to limit the
number of children and limit plaintiffs' permit request were
motivated by the fact that plaintiffs were an interracial
marriage.  Another group[5] submitted a letter expressing its
belief that the Village's actions were motivated by the
interracial marriage and also making reference to past actions of
the Village that they believed were motivated by the Village's
animus against African-Americans.

---

[5]The letter is signed by "The Monitors."  The parties do
not point to evidence as to the background or nature of this
group.

On September 11, 2000, defendant issued an invoice to plaintiffs for $260.00 in legal fees for drafting the new Zoning Ordinance. After plaintiffs sought clarification, they were advised that the invoice was issued in error.

Richard Chapman was a Village trustee from April 1993 until he was elected Mayor in April 2001. As of March 2000, he was chairman of the PZC, but did not attend the March 1, 2000 PZC public hearing. Although he missed that meeting, he did not discuss with the other members what was presented at the meeting nor did he request a copy of the evidence submitted at the meeting. Prior to the March 28, 2000 Village Board meeting,[6] Betty Capista informed Chapman of her opposition to plaintiffs' application. At the March 28 meeting, Chapman moved to refer the matter back to the PZC. In September 1993, Chapman had voted to approve Melody's special use permit. Between 1993 and 2000, Chapman would have driven past plaintiffs' Ravinia residence during daytime hours on weekdays and does not recall ever noticing excessive noise or traffic in the neighborhood. In January 2001, Chapman received a $90.00 campaign donation from one of the developers of the Jacob Court property.

In an October 13, 2000 letter from Silverman, plaintiffs were advised that defendant was intending to hold further public hearings to consider reducing to eight the maximum number of

---

[6]Chapman could not recall the date of the telephone conversation. On defendant's summary judgment motion, it must be assumed that this conversation occurred prior to March 28, 2000.

children at in-home day care. It is unclear if that hearing was subsequently held[7] and there is no contention any reduction to eight children was ever passed.

Both plaintiffs have expressed their personal beliefs that the 2000 application was treated differently because of their interracial marriage. Melody has also testified that persons, including the Village's then-mayor, told her it would be easier if she just moved elsewhere.

In order to succeed on their Count II equal protection claim, plaintiffs must prove that the Village's actions in limiting in-home day care to 12 children was intentionally motivated by an animus against African-Americans or interracial marriages. See Billings v. Madison Metropolitan School District, 259 F.3d 807, 812-13 (7th Cir. 2001). In opposition to summary judgment, plaintiffs must present sufficient evidence from which a rational trier of fact could reach such a conclusion.

As to the Count I class of one claim, plaintiffs must show they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002). This must include proof of vindictiveness, ill will, or some other similarly malevolent

---

[7]Plaintiffs' provide an October 26, 2000 internal memorandum referring to this being a topic at an upcoming meeting. They do not provide minutes of any such meeting.

animus. See Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000), cert. denied, 531 U.S. 1080 (2001); Fenje v. Board of Governors, 2002 WL 959837 *7 (N.D. Ill. May 9, 2002). But compare Olech v. Village of Willowbrook, 2002 WL 1058843 *14-16 (N.D. Ill. May 24, 2002) (dictum). Generally, "the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." Hilton, 209 F.3d at 1008; Purze, 286 F.3d at 455; Shaikh v. City of Chicago, 2002 WL 1147739 *5 (N.D. Ill. May 28, 2002). There generally must be evidence that the plaintiff was "treated differently than someone who is prima facie identical in all relevant respects." Purze, 286 F.3d at 455.

Plaintiffs have not presented evidence from which a rational trier of fact could find that they were discriminated against as a class of one. Plaintiff does not point to evidence of someone else who is prima facie identical in all relevant respects. None of the prior permits were granted to day care operators who provided services to 16 children. Plaintiff herself provided day care for 16 children at her Ravinia residence, but the permit for that residence was granted at a time she was planning to care for 12 children. All the other permits that have been granted since 1993 were for residents serving 12 children or less, except for Meinke who had a license for 13. Moreover, no other applicant had objections raised to his or her permit request. That fact alone distinguishes

Melody's 2000 permit application from all the other applications concerning in-home day care.

Even if it were assumed that at least one other permit application was sufficiently similar to Melody's 2000 application, the class of one claim would fail. Plaintiffs still do not show that defendant acted irrationally or that a Village official acted for personal reasons unrelated to his or her duties. A substantial number of residents, including a number of residents living near Jacob Court, and the Jacob Court developers themselves opposed amending the home occupation rules. Many favored limiting in-home day care to less than 12 children or even prohibiting it entirely. While fears about possible effects on property values[8] or increases in traffic may have been inaccurate, they cannot be found to be irrational, even when drawing all reasonable inferences in plaintiffs' favor. Persons may reasonably disagree as to the appropriateness of home businesses and their effects on a neighborhood. Village officials did not act irrationally or outside the scope of their duties by, in part, making a decision based on this opposition. Moreover, defendant did not prohibit in-home day care, instead taking a compromise position of limiting it to 12 children instead of 16, 8, 0, or some other number. Moreover, it is inconsistent with plaintiffs' claim of vindictiveness both that (a) the Village made the amendments prospective and therefore

---

[8]On the evidence before the court, no conclusion can be drawn as to possible effects on property values.

continues to permit her to serve 16 children at her Ravinia home and (b) the Village still permitted her to have day care for 12 at Jacob Court.

Plaintiffs contend the Zoning Ordinance is clearly irrational because inconsistent with state law. They contend the Zoning Ordinance is preempted as to limits on the number of children because the Illinois Child Care Act sets those limits and non-home-rule municipalities cannot set different limits. Without reaching the merits of that state law issue, it is sufficient to note that plaintiffs can cite no case that has yet considered that issue and it is not frivolous for the Village to contend the Zoning Ordinance is not unenforceable. While plaintiffs may ultimately prevail on this state law claim, it cannot be said that the law is so clearly on their side such that the Village acted irrationally in restricting the number of children that may be served.

Count I will be dismissed.

As to Count II, plaintiffs also fail to present sufficient evidence from which a racial animus may be found. Plaintiffs' and other persons' beliefs as to whether the Village acted with a racial animus is not admissible as proof that such an animus existed. See Little v. Cox's Supermarkets, 71 F.3d 637, 643 (7th Cir. 1995); McMillian v. Svetanoff, 878 F.2d 186, 190 (7th Cir. 1989); Andre v. Bendix Corp., 841 F.2d 172, 176 (7th Cir.), cert. denied, 488 U.S. 855 (1988). A statement that having a home business may affect the "flavor" of a neighborhood

does not, without more, show a racial animus. And, even if it did reflect the speaker's racial animus, it cannot be found that the Village was adopting the racial animus of one of a large number of people who opposed Melody's application. Similarly, a racial animus is not shown by people, including the Mayor, suggesting Melody move elsewhere, especially when it is considered that there is no evidence that Melody has been prevented or discouraged from continuing to conduct her business at her current home on Ravinia.

Plaintiffs also contend that a racial animus can be inferred by the fact that Melody's prior permit application was approved when she was married to a White man, but her later application was not fully approved when she was married to an African-American. They also point to evidence the other applications have been approved.[9] As previously discussed, however, Melody's first permit application and the applications of others were not the same situation as Melody's 2000 application. This was the first application that sought permission to serve 16 children and, for the first time, there was opposition to an application. Once opposition developed, including questions about the business not being limited to inside the home, the Village examined its Zoning Ordinance and realized its occupation rule was inconsistent with permitting

---

[9]As to some of the applicants, no evidence is available as to their race. There is no evidence that any of the other applicants were African-American or married to an African-American.

licensed day care that required more employees and outdoor exercise. The Village then acted to amend the Zoning Ordinance so that licensed day care would be a permissible use. Although some residents supported prohibiting it entirely, the Village did not choose to prohibit in-home day care. Neither did it limit the number of children to eight as some residents urged. It also did not act to make the new rule applicable to Melody's existing group day care home. This is not a situation where a racial animus can be inferred because prior, unopposed applications involving lesser children had been approved. Count II will be dismissed.

Because the federal claims are being dismissed, the supplemental state law claims will be dismissed without prejudice. See 28 U.S.C. § 1367(c)(3). No opinion is expressed as to the ultimate merit of the state law claims. Also, no opinion is expressed regarding whether the purchase of the Jacob Court property is still a possibility such that a justiciable controversy continues to exist that would support a declaratory judgment regarding the validity or enforceability of defendant's current Zoning Ordinance.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [22] is granted. Plaintiffs' motion for summary judgment is denied without prejudice. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiffs dismissing plaintiffs' federal cause of action with

prejudice and dismissing plaintiffs' state law cause of action without prejudice for lack of subject matter jurisdiction.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: JUNE 14, 2002